Strafford
No. 80-433

## JOANNE B. HENDERSON

v.

## DOUGLAS W. HENDERSON

September 16, 1981

*Kalil & Reams*, of Northwood (*Earl L. Kalil, Jr.*, on the brief and orally), for the plaintiff.

*Burns, Bryant, Hinchey, Cox & Shea*, of Dover (*Stephen E. Gaige* on the brief and orally), for the defendant.

KING, C.J. This is a libel for divorce brought by the plaintiff, Joanne B. Henderson, against the defendant, Douglas W. Henderson. After a trial before a marital master, the superior court approved the master's recommendations for a decree of divorce and property settlement. After the trial, the defendant moved to set aside the verdict, and the motion was denied. The defendant appeals those portions of the order dealing with the property settlement.

The parties were married in September, 1971, in Strafford, New Hampshire, after which the defendant worked for several months for the telephone company and then for five or six months in a box factory in Dover, New Hampshire. In 1972, the parties moved to

Wakefield, Massachusetts, where the defendant worked in a real estate firm, without much success. In 1973, the parties moved to Strafford, New Hampshire, where the plaintiff's parents owned a large parcel of property.

The plaintiff's mother, Cora Snow, operated a summer riding camp for girls in addition to a winter snowmobile lodge on her property. Both the plaintiff and the defendant worked at these activities, and Mrs. Snow provided them with room and board, a vehicle, and approximately $100 per month, and also paid many of their personal expenses. In 1975, the parties became totally responsible for the operation of the camp and trail rides, with the understanding that they would eventually purchase the camp from Mrs. Snow.

In 1976, the parties acquired from Mrs. Snow as joint tenants seventy-nine acres of real property for $20,000, the amount of the then outstanding mortgage. Mrs. Snow let the parties use her horses, saddles and horse equipment, and all of her household furniture at no expense to them. In addition, Mrs. Snow loaned money to them, paid the taxes and insurance on the property, and paid the expenses of maintaining the animals. Mrs. Snow also gave them various items of heavy equipment and a vehicle associated with the operation of the camp.

During the next two years, the parties, concluding that the camp was an unprofitable venture, began to operate a public boarding and training stable. This latter endeavor was also unsuccessful, and, in 1978, the parties listed the property for sale at $180,000. Having received no offers for the property at that price, the parties began selling smaller parcels of the land in the hope of reducing the size of the horse farm to one that would increase its marketability.

The first sale of twenty-six acres realized $13,000; the next sale of five acres realized $10,000; the third and final sale of eleven acres realized $18,500 for a total of $41,500. After disposing of these various parcels of land, the remaining property was offered for sale, and the parties rejected one offer of $85,000.

When these parcels of land were sold, the bank holding the mortgage demanded that $4,000 be paid toward the principal of the mortgage on the property. The remaining proceeds went toward living expenses and improvement of the property. Much of the proceeds went to purchase a dump truck, a skidder, and a wood-splitter to be used by the defendant in a logging business that he began in 1979.

The various business enterprises of the parties all have been

either unsuccessful or only marginally profitable. Furthermore, neither party has held outside employment since 1972. During the last several years, prior to the divorce, the parties never made enough money to pay any federal income tax.

In 1980, the marriage disintegrated, and the plaintiff filed for divorce. A hearing was held on August 14, 1980. The Marital Master (*Earl J. Dearborn*, Esq.) recommended a decree, and the Superior Court (*Contas*, J.) approved the master's recommendation.

The decree granted the plaintiff a divorce on the grounds that irreconcilable differences had caused the irremedial breakdown of the marriage. The decree granted the plaintiff the marital residence in Strafford and the household furnishings, subject to any encumbrances, an automobile, a nine-horse van, the flat-bed trailer, any horse equipment on the premises not the property of Mrs. Snow, and one of the parties' two ponies. The decree also provided that the plaintiff would assume and pay the mortgage and any tax bills on the real estate, the outstanding bills to various department stores, the oil bill, and one-half of the parties' charge account. The defendant was awarded the dump truck, the skidder, the wood-splitter, and all of his tools, subject to existing liens. The decree also awarded the defendant the personal property that was a gift of his parents and the other of the parties' ponies. The defendant was ordered to pay the remaining debts of the parties. A motion by the defendant to reconsider and set aside the decree was denied.

On appeal, the defendant argues that the master abused his discretion in awarding to the plaintiff the marital residence and certain of the vehicles, which were registered in the defendant's name. He contends that, because the decree leaves the plaintiff with approximately $80,000 in assets and the defendant with approximately $10,000 in assets, this division of the property of the parties in unfair, unjust and unreasonable. We disagree.

■ ■ The trial court in domestic relations cases has been given broad discretion in determining questions relating to the division of property between the two parties. *Goudreault v. Goudreault*, 120 N.H. 140, 140, 412 A.2d 736, 736 (1980); *Grandmaison v. Grandmaison*, 119 N.H. 268, 270, 401 A.2d 1058–59 (1979); *Hunneyman v. Hunneyman*, 118 N.H. 652, 652–53, 392 A.2d 147, 148 (1978); *Azzi v. Azzi*, 118 N.H. 653, 655, 392 A.2d 148, 149 (1978). The party on appeal in marital matters must show a clear abuse of discretion by the trial court, *Goudreault v. Goudreault supra*, 412 A.2d at 736, or that the orders of the trial court were "improper

and unfair." *Adams v. Adams*, 117 N.H. 43, 44, 369 A.2d 196, 197 (1974).

The record shows that the assets awarded to the plaintiff, as well as most of the other assets of the parties, were obtained from the plaintiff's mother, Mrs. Snow, or from funds derived from the sale of her gifts to the parties. Although the parties paid $20,000 for the real estate and business, that sum was far below its market value. The master could rightly determine, as he seems to have done, that Mrs. Snow's sale of the property for the amount of the outstanding mortgage was as a result of the family relationship. The evidence is clear that without the generosity of Mrs. Snow, the property and financial assets of the parties would have been miniscule. Given these facts, the master did not abuse his discretion in awarding the horse farm and equipment to the plaintiff. *But see Hanson v. Hanson*, 121 N.H. 719, 721, 433 A.2d 1310, 1311–12 (1981).

■ In carefully reviewing the record and the property settlement in its entirety, and taking into consideration all of the relevant factors, including but not limited to the standard of living established during the marriage and the financial status of the parties, and the contributions by way of money or services to the business and property, we cannot say that the property settlement is unjust, inequitable, or improper. The essential question is whether there is evidence to support the trial court's decree with reference to the division of property. *See Buckner v. Buckner*, 120 N.H. 402, 404–05, 415 A.2d 871, 873 (1980). We hold that there was such evidence.

■ The master did not specifically award to either party the 1966 International Star Fleet 2000 tractor or the Model A Ford. During oral argument, however, the plaintiff indicated that she had no objection to the defendant's receiving the Ford; consequently, we remand this case to the trial court for the determination of which party is entitled to the tractor. We are not persuaded by the plaintiff's argument that the court's decree should be read as impliedly granting the tractor to the plaintiff simply because the tractor would be useful in the conduct of the horse farm. We recommend that masters make final disposition of all property which is specifically in contention, especially where either party reasonably and seasonably moves for clarification.

*Remanded on one issue for*
*determination; otherwise affirmed.*

BATCHELDER, J., did not sit; the others concurred.